VULCAN LIFE & ACCIDENT INSURANCE COMPANY,
Petitioner,

*v.*

FLOSSIE E. SEGARS, Administratrix, Respondent.

391 S.W.2d 393.

(*Jackson,* April Term, 1965.)

Opinion filed May 24, 1965.

W. W. Lackey, Savannah, for petitioner.

Joe A. Freemon, Lawrenceburg, for respondent.

MR. JUSTICE CHATTIN, delivered the opinion of the Court.

The parties will be referred to in this opinion as they appeared in the trial court.

Mrs. Flossie E. Segars, Administratrix of the estate of her husband, John M. Segars, Deceased, brought this action to recover benefits under a credit life insurance policy on the life of her deceased husband issued to him by defendant, Vulcan Life & Accident Insurance Company.

The facts are, complainant and her husband moved to Hardin County in the latter part of the year 1959.

In June 1960, Mr. and Mrs. Segars obtained a loan of $3,000.00 from the First National Bank of Savannah, Tennessee.

Mr. Segars was a veteran of World War I and was for some time prior to his death receiving a veteran's pension check for total and permanent disability.

Each month he would cash his check at the Bank and make monthly payments on the loan. By the first of February, 1961, the loan had been reduced to $1835.00.

On or about January 30, 1961, Mr. Segars suffered a severe heart attack. He was hospitalized by his physician, Dr. T. R. Williams, in the Hardin County Hospital and remained there until February 9, 1961. He was discharged on that date and advised to remain at his home and not engage in any arduous activities for three or four weeks. He was to have been checked by his doctor after this period of time.

On February 18, 1961, he and his wife went to the Bank and obtained a loan of $815.00 which was consolidated with the balance due on the first loan.

Mr. H. M. Williams, the President of the Bank, handled the matter. He caused to be issued to Segars a certificate of life insurance in the amount of the' loan of $2650.00. The loan was to be paid in eighteen monthly installments. The premium for the insurance was $39.75, which was paid.

The insurance certificate issued to Segars is known as credit life insurance.

This particular insurance involves three documents: a master policy, which is on file at the Bank; the application of the Bank for the insurance; and the certificate issued by the Bank as agent of the insurance company to the debtor.

The master policy provides:

"The creditor is hereby authorized to issue certificate of insurance on the company's forms to the debtor when the latter has complied with the requirements for coverage hereunder and when the creditor believes him to be alive and in sound health."

The master policy also provides that if, in the sole judgment of the insurance company, the debtor is found to be an unacceptable risk within thirty days from the date the completed certificate issued to the debtor is received at its home office, the company may cancel the certificate and return the premium.

It further provides the master policy and the insurance certificate issued to the insured-debtor shall constitute the entire contract.

The master policy contains the following provision:

"In the event the Debtor pays his indebtedness prior to its scheduled maturity date this insurance may be cancelled or continued by the Insured in accordance with the laws and rules and regulations of the state in which the indebtedness is contracted."

The certificate issued to the debtor, in this case Segars, provides:

"This insurance shall not take effect hereunder unless the insured-debtor named herein is alive and in sound health and is between the ages nearest birthday of eighteen to sixty-five years, both inclusive, on the effective date hereof."

The creditor, the Bank in the instant case, is made the primary beneficiary. A secondary beneficiary may also be named or in the event one is not named, then any benefits due by virtue of the policy after the loan is satisfied will be paid to the insured's estate.

No written application of the insured-debtor nor a physical examination are required as prerequisites to the issuance of the certificate.

Segars died within two days after the issuance of the insurance certificate. He died on February 20 1961, of a heart attack at the age of sixty-four.

The Company refused to pay the amount of the insurance but did tender the amount of the premium to the administratrix. This suit resulted. It was tried upon the depositions of Mrs. Segars and Mr. H. M. Williams and certain stipulations and exhibits.

The Chancellor found the condition in the certificate the insurance would not be effective unless the in-

sured was of sound health on the effective date of the certificate was valid and enforceable. He found Segars was not of sound health at the time of the issuance of the certificate and dismissed the bill. He further found the defendant had not waived or was estopped to plead the condition precedent of sound health as a defense.

Mrs. Segars appealed to the Court of Appeals assigning as error the evidence preponderated in favor of the complainant; and that the insurer was estopped to raise the question of the condition of sound health contained in the certificate.

That Court sustained both assignments of error and entered a decree in that Court for complainant in the amount of the insurance.

Defendant has petitioned this Court for the writ of certiorari which we have granted.

The defendant has assigned five assignments of error complaining of the action of that Court in holding the insurance contract ambiguous rendering the condition precedent nugatory as a defense and that defendant had waived and was estopped to rely on the condition precedent as a defense.

We agree with the defendant the Court of Appeals was in error in finding certain provisions in the master policy and the condition precedent of soundness of health as provided in the certificate of insurance issued to the insured were ambiguous. However, it is our opinion the Court of Appeals was justified, under the facts of the case, in finding the defendant had waived its right to rely upon the condition precedent of soundness of health contained in the certificate of insurance as a defense.

Mrs. Segars testified that when the loan was made Mr. Williams did not inquire as to Mr. Segars' health. She stated Mr. Williams, without any inquiry as to the condition of his health, wrote out the certificate of insurance and handed it to him.

Mr. Williams testified as follows:

"Q. Mr. Williams, do you recall the occasion of this loan in the amount of $2650? Not the date but the occasion.

"A. It seems to have been a renewal of a note for an earlier loan—probably the balance on this $3,000 loan up here.

"Q. Mr. Williams, do you know whether you or some other official of the bank handling that loan—the making of that $2650 loan?

"A. No, sir, I couldn't tell without looking at my record.

"Q. Do you remember having a conversation with Mr. Segars on the occasion of the second loan, that is the $2650 loan in February 1961?

"A. I had a conversation with him at the time one of these loans were closed, I don't remember which one, about some insurance in connection with the loan —that was on a prior loan that I had that conversation with him—and on this one the question of insurance came up but it came up from him.

"Q. Do you remember in substance how it came up or what was said?

"A. Well, on making out the application for the loan, when I started to write out the note, he says, 'I

guess you just as well include the insurance.' I think that was brought about by his having been asked on a prior loan if he wanted life insurance in connection with the loan and he declined to take it.

"Q. So then on this occasion as you referred to it, that is this February loan, then you did talk with him on that occasion?

"A. Yes, I made the loan.

"Q. Did you make any inquiry whatever of Mr. Segars about his physical condition?

"A. No, sir.

"Q. Did Mr. Segars state to you anything concerning his physical condition?

"A. No, sir."

He further testified: "I explained it to him that in case of his death while the note was still unpaid, the insurance would pay the note."

On cross examination he stated it was his normal procedure to ask a borrower whether he wanted credit life insurance and to issue the insurance certificate without inquiring about the condition of his health.

We are mindful of the rule a condition precedent of sound health as to the effective date of the policy contained in an industrial life insurance policy is valid and enforceable. *De Ford v. National Life & Accident Insurance Company*, 182 Tenn. 255, 185 S.W.2d 617 (1945); *Metropolitan Life Insurance Company v. Chappell*, 151 Tenn. 299, 269 S.W. 21 (1924); *Life & Casualty Insurance Company of Tennessee v. Jackson*, 48 Tenn.App. 27, 342 S.W.2d 720 (1961).

It is our opinion, however, the facts in the case at bar are not controlled by those decisions. In each of those cases an application was required and the element of fraud on the part of the insured or collusion of the insured and agent, and no waiver or estoppel being operative against the insurance company, were the decisive facts.

In this case, there was no misrepresentation on the part of the insured as to the condition of his health. There was no fraud or collusion on the part of the insured and the agent with respect to the issuance of the certificate.

It is undisputed the agent, Williams, made no inquiry as to the condition of insured's health. Williams told the insured the insurance would pay the note in the event of his death if unpaid at that time. Nor did Williams call to the insured's attention the condition precedent of sound health as provided in the certificate.

Under the circumstances we are of the opinion the insurer is not entitled to invoke the rule the negligence of the insured in failing to read the policy, and in retaining it, will preclude recovery. Insured had no reason to believe the policy contained the condition. He had no reason to doubt the good faith of the agent.

"Courts in most jurisdictions take judicial knowledge of the fact that it is customary for insureds to accept policies and to keep them without reading them." *National Life and Accident Insurance Company v. Blackburn,* an unreported opinion by Judge Felts while on the Court of Appeals, filed March 26, 1949, and quoted in *Berryhill v. Mut. Ben. H. and A. Ass'n.,*

37 Tenn.App. 303, 262 S.W.2d 878 (1953); Vance on Insurance, 2d Ed, 222-23.

■ It is our opinion the instant case is governed by the following rules:

"As a general rule the insurer is precluded from asserting a ground of forfeiture resulting from mistake, fraud, or negligence of its agent without the knowledge or collusion of the insured." 45 C.J.S. Insurance sec. 728, page 733; *Dickens v. St. Paul Fire and Marine Insurance Co.*, 170 Tenn. 403, 95 S.W.2d 910 (1936); *Hale v. Sovereign Camp, W. O. W.*, 143 Tenn. 555, 226 S.W. 1045 (1920).

In the case of *Henry v. Southern Fire & Cas. Co.*, 46 Tenn.App. 335, 330 S.W.2d 18 (1959) the following rule, taken from 29A Am.Jur., Insurance, Section 1049, page 219, was quoted with approval:

"In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the fraud, misconduct, or negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal."

This lawsuit would probably never have arisen had the agent, Williams, merely asked the insured the condition of his health. Had the deceased misrepresented the condition of his health, the insurance company would have had a valid defense.

■ We think it was negligence for the agent to issue the certificate of insurance without inquiring as to the insured's health. He knew or should have known the

insurer would deny liability in the event it was determined the insured was not of sound health when the policy was issued. He took that chance which resulted in this lawsuit. His act was the act of the insurer and the company should be the party to suffer.

■ The negligence or mistake of an agent within the scope of his authority is the responsibility of his principal, the insurance company. *Henry v. Southern Fire & Cas. Co.,* supra.

An analogous situation has arisen with respect to fire insurance policies which contained clauses that conditioned liability on sole ownership of the property insured which were issued on oral application and no inquiry made as to the status of the title by the insurer or its agent.

With respect to such a situation it is said in Vance, Insurance, 3rd Ed., Anderson, Section 89, page 540:

"After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer. The situation seems to be

strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose."

We conclude, under the particular facts of this case, the insurer waived or was estopped to plead the condition precedent of sound health as a defense to this suit.

The estate of the insured would, insured having relied upon the experience and competence of the agent, Williams, and paid the premium for the expected protection, we think, be prejudiced if the insurance company was permitted to rely upon the condition precedent avoiding the policy.

Accordingly, the judgment of the Court of Appeals is affirmed with costs.

BURNETT, CHIEF JUSTICE, and WHITE, HOLMES and DYER, JUSTICES, concur.