**BITUMINOUS FIRE & MARINE IN-
SURANCE COMPANY, Appellant,**

v.

**IZZY ROSEN'S, INC., Appellee.**

**No. 73–1313.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 27, 1973.

Decided and Filed March 21, 1974.

———♦———

Eugene C. Gaerig, Memphis, Tenn., on brief, for appellant.

Thomas R. Prewitt, and Edward M. Kaplan, Memphis, Tenn., on brief, for appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal is from a judgment in favor of appellee, Izzy Rosen's, Inc., against appellant, Bituminous Fire & Marine Insurance Company, for failure to take over the defense, and otherwise fully to insure appellee, in an action brought against it for slander and false arrest. The insurance company denied coverage, and this action followed.

In 1962 Harry Rosen, acting for appellee, purchased a multi-peril insurance policy from United States Fidelity & Guaranty Company through the insurance agency of Ronald Gruenewald. When that policy was about to expire, Gruenewald was ill, so Rosen purchased another policy from a different agent. In December of 1968 Gruenewald again solicited Rosen's business and was successful. This policy was issued by appellant. Subsequently, in December of 1969, an action was brought against appellee by one Shelton for false arrest and slander, and appellee requested appellant to defend on its behalf. Appellant denied that the policy it had issued to appellee covered such personal injury risks as slander, libel and false arrest. The action against appellee was eventually settled for $9,000.00.

Appellee instituted the present action in the court below, on the basis of diversity of citizenship, seeking the funds which it had paid in settlement and also the attorney's fees expended in its defense. Three alternative theories of liability were presented: (1) That the insurance policy covered slander and false arrest, and therefore, appellant owed a duty to defend and insure; (2) that if the policy did not provide coverage, the court should reform the policy to provide coverage and award damages due to mutual mistake; and (3) that damages should be awarded against appellant because of the negligence of its agent, Gruenewald.

At trial Harry Rosen testified that one of his concerns, as he considered which insurance policy to buy, was whether his company would be protected from any liability that might arise from the arrest of any person in the store whom an employee might accuse of illegal activity. Shoplifting and forgery had always been problems, but the civil unrest that occurred in the wake of the assassination of Dr. Martin Luther King, Jr. seemed to aggravate the problem. Rosen stated that he told Gruenewald: "Ronnie, there is one thing that concerns me now, and that is liability coverage, and I want full liability coverage." He testified that the agent replied: "You've got full liability coverage; you've got a very complete policy." Rosen took the policy to his downtown store but never read it.

Gruenewald testified that Rosen's major concern had been with the possible theft of a large amount of merchandise. Consequently, the policy contained a very high limit on damage or theft of property. However, Gruenewald denied that Rosen asked for "full liability protection" or that he (Gruenewald) made the statement that such protection was provided. In fact, he testified that at the time the policy was written, specific coverage for false arrest, libel and slander were not common risks covered by insurance policies. Most people in the retail trade had told the agent, as he testified, that they did not wish to pay the high premium for this type of policy.

At the conclusion of the appellee's case, and again after all of the evidence

had been presented, appellant moved for a directed verdict. Both motions were denied. The court then instructed the jury on such general matters as the preponderance of the evidence, the burden of proof and the credibility of witnesses. It gave no instructions on any legal principle or standard to be applied to the facts which the jury should find. Four special interrogatories were submitted to the jury which it answered as follows:

1. Did Harry Rosen at the time the Bituminous Fire & Marine Insurance Company policy was delivered by Ronald Gruenewald, tell Mr. Gruenewald that he wanted full liability protection?

Answer: No.

2. Was it the intention of the plaintiff acting through Harry Rosen that the policy issued by defendant and delivered by Mr. Gruenewald include coverage for libel and slander, false arrest, false imprisonment, and malicious prosecution?

Answer: Yes.

3. Did Mr. Gruenewald assure Mr. Rosen that the Bituminous Fire & Marine Insurance Company policy which he delivered would give Izzy Rosen's, Inc., full liability protection?

Answer: No.

4. Did Mr. Gruenewald know or should he have known as an experienced insurance agent that it was the intention of Mr. Rosen that the policy delivered by Mr. Gruenewald was intended to include coverage for libel and slander, false arrest, false imprisonment and malicious prosecution?

Answer: Yes.

To the conclusions of the jury, the court added separate findings of fact of its own. It found that Harry Rosen was not experienced in insurance matters. Additionally, it found that Gruenewald, although he had not defrauded Rosen, "was negligent with regard to the intent of Rosen to obtain full coverage, including personal injury protection." The court then applied what it believed to be

the law to its own findings of fact and the answers by the jury to the interrogatories:

If the agent of the insurer delivers to the insured a policy which is known or should be known to be defective with regard to certain coverage, such conduct is a representation that the policy contains coverage for the purpose intended. If the insured is ignorant of the omitted coverage and has no special competence or experience in insurance matters, he is privileged to rely upon that representation without reading or being charged with knowledge of the contents of the policy.

Henry v. Southern Fire and Casualty, 46 Tenn.App. 335, 364–365 [330 S.W.2d 18] (1958).

Because Harry Rosen as agent of the plaintiff intended to include coverage for libel, slander and false arrest, and because Gruenewald as agent for the defendant insurance company knew or should have known that Rosen intended full coverage, the defendant is liable for the amount paid Shelton plus the expenses incurred in the State Court litigation less the amount of the cost of the coverage for personal injury protection.

As already mentioned, the conclusion of the district court and that of the jury was that Gruenewald, as appellant's agent, either knew or should have known that appellee intended to have full liability coverage. The agent, according to the court's separate finding, was "negligent" in not writing such coverage into the policy, and his negligence was imputed to the appellee. As support for its decision, the court relied principally upon the Tennessee Appeals Court decision in Henry v. Southern Fire & Casualty Co., 46 Tenn.App. 335, 330 S.W.2d 18 (1958).

In *Henry* the issue was whether a certain trailer which the insureds used in their logging operation was actually covered by the policy despite a clause that *excluded* coverage on all trailers not specifically described in the policy. This

particular trailer was not so described. However, there was evidence that the insured had requested a liability policy that would cover the entire operation of its business. The insurance agent, Dr. Cox, was familiar with the business and assured the owners that they had full liability coverage. At the conclusion of the evidence the trial judge sustained a motion to dismiss. On appeal the court of appeals reversed, holding that the plaintiff's evidence, if believed by the jury, was sufficient to support a cause of action. The opinion appears to rest upon the theory of *estoppel* to rely upon an exclusion from coverage contained in the policy although mistake or negligence may be the basis for the estoppel. This explains the district court's quotation from the *Henry* opinion set forth and the wording of interrogatory No. 4. What the court overlooked, however, was that in *Henry* there was a specific exclusionary clause while in the present case there is neither an insuring agreement as to the risks involved nor an exclusionary clause.

An important clarification of *Henry* appears in E. K. Hardison Seed Co. v. Continental Casualty Co., 56 Tenn.App. 644, 410 S.W.2d 729 (1966). There an action was brought against the insured by one of its customers on the ground that seeds which were warranted to produce green lima beans actually produced white ones. When requested to defend the action, the insurance company refused because the policy did not provide coverage for breach of warranty. In spite of testimony that insured had both requested and been assured of full coverage, the trial court dismissed the case. The court of appeals affirmed, finding no basis for an action either on the policy as written or for reformation of the contract. Furthermore, the court held that although an insurance company might be estopped from asserting an exclusion in the policy which the agent negligently failed to remove, neither estoppel nor waiver would serve to write into the policy coverage which was not there originally.

So, in order for there to be a recovery on the basis of an estoppel, a paramount condition must be met, the acts of the agent relied on for the estoppel and the estoppel arising on account of these acts must result in a liability which would be within the insuring clauses of the contract. 410 S.W.2d at 733.

■■ When the *Hardison* and *Henry* decisions are read together it is clear that under Tennessee law a showing that an insurance agent told the insured that his policy contained full liability coverage is sufficient to estop the insurance company from relying on an exclusion in the policy to deny coverage. Similarly, if the agent mistakenly or negligently wrote a policy for the insured which the agent either knew or should have known did not provide the coverage that the insured wanted and needed, then the insurance company may not assert the exclusionary clauses. Henry v. Southern Fire & Casualty Co., 46 Tenn.App. 335, 330 S.W.2d at 32 (1958); *See* Vulcan Life Ins. Co. v. Segars, 216 Tenn. 154, 391 S.W.2d 393 (1965); Imperial Casualty & Indemnity Co. v. Carolina Casualty Ins. Co., 402 F.2d 41, 45–47 (8th Cir. 1968). But we have been unable to find any case in which a Tennessee court has used the doctrines of estoppel or negligence to write into an insurance policy coverage that was not specified in the contract. Instead, the cases are limited to the situation in which an insurance company is estopped to assert an exclusionary clause, thereby permitting the insured to rely on the coverage provisions in the policy.

■ It follows that the district court was in error in disposing of the case upon the basis of the *Henry* decision which, as we have pointed out, postulates an *estoppel* to assert an *exclusionary* provision of a policy of insurance.

■ In its conclusions of law the district court found that the policy of insurance as written could not be construed to provide coverage for false arrest, false imprisonment, for malicious

prosecution. With this determination we are in agreement. The insuring language in the policy was: "The company (appellant) will pay on behalf of the insured (appellee) all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . ." As the district court correctly concluded, such a policy contemplates "some injury to the body of a physical nature in order to come within the definition of 'bodily injury'". Provident Life & Accident Ins. Co. v. Campbell, 18 Tenn.App. 452, 79 S.W.2d 292 (1934). We agree with the district court that the evidence is insufficient to support a finding that the state court plaintiff suffered any bodily injury within the meaning of the policy which would require the appellant to pay the amount of the state court judgment.

■ Neither, in our opinion, is the appellee entitled to recover the amount paid in settlement of the state court claim upon the theory of a reformation of the policy because of mutual mistake or fraud—one of the alternative theories advanced by the appellee in its complaint. In Tennessee, the reformation of a contract is an equitable remedy, applicable where there is a mutual mistake of the parties, or a mistake of one party induced by the other's fraud. Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 472, 189 S.W. 879 (1916); Marron v. Scarbrough, 44 Tenn.App. 414, 314 S.W.2d 165 (1958); McMillan v. Great Southern Corp., 63 Tenn.App. 732, 480 S.W.2d 152, 155 (1972, cert. denied by Sup.Ct. Tenn.1972).

■ In its separate findings the district court specifically stated that the insurance agent was "not guilty of fraud in his dealings with Harry Rosen." No finding of fact was found on the question of mutual mistake. It is evident to us that the district court was of the opinion that there was insufficient evidence in the record to permit the appellee to prevail by invoking the equitable remedy of reformation. Our own examination of the record leads us to the same conclusion.[1]

■ As a further basis for recovery of the amount paid in settlement of the state court claim, appellee alleged in its complaint that the appellant was "negligent in law" in failing to include in the said policy of insurance a provision against liability for slander, false arrest, false imprisonment, and malicious prosecution. In response to this claim, the appellant, in its answer, specifically pled that the appellee was guilty of contributory negligence in failing to ascertain that the policy delivered to it did not provide for such coverage. Hence, the pleadings raised the question as to whether Tennessee recognizes an independent tort action for the negligent failure of an insurance company, or its agent, to include within the policy certain types of coverage expected by the insured. We find it unnecessary to decide this question in the present case for it is clear to us from the record that a separate tort theory of liability, although initially pleaded by the appellee, was waived or abandoned by it before and during the trial. This is clear for

---

1. As the court stated in E. K. Hardison Seed Co. v. Continental Casualty Co., *supra*:

While in a proper case a bill may reform a written policy after loss has actually happened, Phillips v. North River Insurance Co., 14 Tenn.App. 356, it is fundamental that the same rules applying generally to the reformation of a written instrument by a court of equity apply to the reformation of an insurance policy. So that a court of equity will not reform a policy except upon clear, cogent and convincing evidence of both the mistake and of the antecedent agreement with respect to which the mistake was made. Jones v. Jones, 150 Tenn. 554, 266 S.W. 110; Battle et al. v. Claiborne, 133 Tenn. 286, 180 S.W. 584; Myrick v. Johnson, 25 Tenn. App. 483, 160 S.W.2d 185; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 125 A.L.R. 1053. This, of course, implies there must have been an antecedent agreement that was not incorporated in the written instrument to be reformed and that a mistake was made in the integration of the formal contract, and not with respect to the treatying between the parties during which their minds were meeting on the contract's contents. 410 S.W. 2d at 732.

several reasons. First, although the appellee at the request of the court submitted three special interrogatories to be submitted to the jury for its consideration, none of them was directed to the theory of an alleged liability in tort based upon negligence. Second, when the court in its instructions failed to charge the jury on such a theory of liability, which would have required it to define the necessary elements of a negligent tort action, such as a duty on the part of the insurance company to exercise the care and caution of an ordinary prudent person under the same or similar circumstances, the necessity of a breach of duty by the company, the necessity that any breach be the direct or proximate cause of any injury suffered by the insured, no objection whatsoever was interposed by the appellee to these omissions from the charge. It is abundantly clear, therefore, that this alternative ground may not be considered by us on appeal to support the verdict in appellee's favor. In Lively v. Elkhorn Coal Co., 206 F.2d 396, 399 (1953), this Court, speaking through Circuit Judge Shackelford Miller, specifically held that where a plaintiff submitted no instructions upon issues allegedly raised by the pleadings and failed to except to the failure of the district court to so charge, these issues could not be considered on appeal.

The District Judge apparently considered the evidence insufficient to sustain this theory of the case. By his instructions to the jury appellant's recovery, if any, was in connection with damages resulting from the alleged breach of contract. The case was submitted on that theory alone. Appellant requested no instruction on the theory of the case which he now urges upon us, took no exception to the failure of the Trial Judge to so instruct the jury, and did not obtain a ruling on such a theory. The question is not before us on this review. Rule 51, Rules of Civil Procedure, 28 U.S. C.A.; Stilwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714, 715;

Pan-American Life Ins. Co. v. Fowler, 5 Cir., 174 F.2d 199, 202; Chesapeake & Ohio Ry. Co. v. Thomason, 6 Cir., 70 F.2d 860, 863; Helvering v. Tex-Penn Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755; Cold Metal Process Co. v. McLouth Steel Corp., 6 Cir., 170 F.2d 369, 380. See National Bank of Commerce in Saint Louis v. Laughlin, 305 Mo. 8, 264 S.W. 706, 717.

There can be no question in the present case that the district court tried the case and submitted it to the jury upon the assumption either that the plaintiff had abandoned the separate tort theory of negligence, or that such a cause of action for negligent failure of an insurance company to provide certain risks in a policy is not recognized in Tennessee, or that this theory was not supported by substantial evidence in the record. Although the court in its separate findings did state that the agent was "negligent with regard to the intent of Rosen to obtain full coverage, including personal injury protection," this finding obviously was intended by the court in the *Henry* sense of *estoppel* derived from the jury's affirmative answer to interrogatory No. 4. That this is true is supported by the court's conclusion of law No. VI, which was clearly taken verbatim from certain language in the *Henry* decision, as already pointed out. Perhaps even stronger evidence of the court's thinking that a theory of common law negligence was no longer in the case is that neither in the special interrogatories submitted to the jury nor in its instructions to the jury did the court include the essential ingredients or elements which the jury would have been required to find to support a tort action grounded upon negligence, including duty, breach, proximate cause, the measure of damages, etc. Also, that the court did not have such a tort theory in mind is evidenced by the total failure to mention either in the special interrogatories or in the jury instructions the defense of contributory negligence which obviously would have had substantial evidence in its support. Thus, Rosen ad-

mitted in his testimony that he was very much concerned about the type of coverage he now insists upon and that he relied solely upon the representation of the agent (a representation, incidentally, which the jury found was not actually made), without even bothering to read the policy or to have his attorneys check it for him.

Since neither of the theories advanced by the appellee for recovery of the amount of the state court action ($9,000.00 as the result of an out-of-court settlement), nor the *Henry* theory relied upon by the court, finds support in the record, the district court should have directed a verdict in favor of the appellant at the conclusion of all the proof with respect to such liability claim.

■ The case, however, stands on a different footing insofar as the appellee seeks recovery of the expenses in the aggregate amount of $2,129.30 incurred in defending the state court action. Under Coverage C of the policy the insurance company was required to defend any suit against the insured seeking damages on account of bodily injury or property damage, "even if any of the allegations of the suit are groundless, false or fraudulent." In his declaration against appellee-insured in the state court, plaintiff Shelton claimed damages for bodily injury as well as for false arrest, his declaration alleging that he had been treated "with force and alarm, forcibly and violently seized, assaulted and laid hold of . . . ."

■ The rule in Tennessee is that the duty of an insurance company to defend its insured is determined by the allegations in the complaint or pleading asserting a claim against the insured. The district court correctly so held, citing Dempster Bros. v. U.S.F & G Co., 54 Tenn.App. 65, 388 S.W.2d 153 (1964); American Indemnity Co. v. Sears Roebuck Co., 195 F.2d 353 (CA 6 1952). In response, the insurer insists that it should not have been forced to defend the claim because this would have in-

volved it in a conflict of interest. This contention is without merit in view of the express terms of Coverage C of the policy, defining the insurance company's duty to defend based upon the allegations of the suit against the insured. The district court held, despite the allegations of the state court declaration, as we have stated, that the injury to Shelton did not arise from bodily injury within the terms of the policy, a finding which appears to be supported by the record.

The judgment of the district court is therefore, affirmed in part and reversed in part. The action is remanded to the district court for entry of judgment, denying appellee a recovery of the amount paid in settlement of the state court judgment but awarding the appellee a recovery against the appellant in the amount of $2,129.30, the undisputed amount incurred in defense of the state court action. Costs in the court below will be taxed in the discretion of the district court.