64 F.3d 662
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James P. CAMPBELL, Plaintiff-Appellant,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,
Defendant-Appellee.
 No. 94-5126.
 United States Court of Appeals, Sixth Circuit.
 Aug. 10, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges; JOINER, District Judge.*
 BATCHELDER, Circuit Judge.
 
 
 1
 Plaintiff-appellant James P. Campbell appeals the district court's grant of summary judgment in favor of defendant-appellee The Equitable Life Assurance Society in plaintiff's action claiming breach of an insurance policy. For the following reasons, we affirm.
 
 I.
 
 2
 On November 27, 1989, Campbell applied for a disability policy from The Equitable. The selling agent for the policy, Herbert Broadwater, Jr., had been a friend of Campbell for some time. Apparently, because Campbell was pressed for time, Broadwater completed the medical information portion of the application by himself. Campbell signed the application without reading it and never checked his responses for accuracy.
 
 
 3
 The completed application for the policy contained the response "no" to several questions regarding medical treatment, including questions about psychological counselling. These answers were false because Campbell had received counselling for depression. Broadwater either had this information in his file or had immediate access to it because Campbell previously had completed another application with Broadwater for life insurance with an affiliate of The Equitable. To qualify for this life insurance, Campbell had undergone a paramedical examination, during which he informed the nurse that he had received counselling for depression. The Equitable disability insurance form states that "[t]he statements and answers in all parts of this application are true and complete to the best of my knowledge and belief .... No agent or medical examiner has authority to modify this Agreement or to waive any of The Equitable's rights or requirements." On March 5, 1990, Campbell signed an amendment that contained a similar warranty regarding the continued veracity of the application. Subsequently, Campbell became disabled. The Equitable paid him pursuant to the policy for eight months and then refused to pay any more claims.
 
 II.
 
 4
 This court reviews a district court's grant of summary judgment de novo. In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994). Both parties agree that Tennessee law governs this case. Under Tenn. Code Ann. Sec. 56-7-103 (1994), no written or oral misrepresentation made during the application for an insurance policy "by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy ... unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss." There is no dispute that a misrepresentation was made and that this misrepresentation increased the risk of The Equitable's loss.
 
 
 5
 We agree with the district court that this case is controlled by Beasley v. Metropolitan Life Insurance Co., 229 S.W.2d 146 (Tenn. 1950), Montgomery v. Reserve Life Insurance Co., 585 S.W.2d 620 (Tenn. Ct. App.), cert. denied, (Tenn. 1979), and Hardin v. Combined Insurance Co. of America, 528 S.W.2d 31 (Tenn. Ct. App.), cert. denied, (Tenn. 1975). In Beasley, the insurance application did not reflect that the insured suffered from a variety of serious ailments, yet the agent knew of these ailments at the time he and the insured filled out the application. Beasley, 229 S.W.2d at 146-47. The plaintiff, the wife of the since-deceased insured, testified at trial that the agent read the questions and her husband answered them truthfully, but that the agent recorded false answers on the application without either her or her husband's knowledge. Id. at 147. After the agent completed the answers, the insured signed the application without reading it. Id.
 
 
 6
 Based on these facts, the Beasley court held that the defendant insurance company was entitled to a directed verdict. The court held that a person is "under a duty to learn the contents of a written contract before he signs it," and, unless a victim of fraud, he cannot deny his obligation if he does not read the contract. Id. at 148. Otherwise, as the Supreme Court has stated, "'contracts would not be worth the paper on which they are written."' Id. (quoting Upton v. Tribilcock, 91 U.S. 45, 50 (1875)); see Montgomery, 585 S.W.2d at 622 ("[W]here the agent deliberately omits from the application the insured's correct medical history and that omission increases the risk of loss, there can be no recovery on the policy where the insured, failing to read the application, affirms the accuracy of the statements therein contained.").
 
 
 7
 Campbell correctly asserts that "an insurance company is generally estopped to deny any liability on any matter arising out of fraud, misconduct or negligence of an agent of the company." See Henry v. Southern Fire & Casualty Co., 330 S.W.2d 18, 30 (Tenn. Ct. App. 1958), cert. denied, (Tenn. 1959); Bill Brown Construction Co. v. Glens Falls Ins. Co., 818 S.W.2d 1, 7 (Tenn. 1991). According to Campbell, Beasley and its progeny create an exception only to the extent that "when a person signs a filled-out application he is bound by its contents"; the general rule in Henry, therefore, applies to the case in which a person signs a blank application. Henry and Bill Brown both involved an agent allegedly promising the insured that the insurance policy offered a broader range of coverage than specified in the written contract. Henry, 330 S.W.2d at 29-30; Bill Brown, 818 S.W.2d at 1-2. Here, the agent made no oral misrepresentation to Campbell, the insured, about the scope of the policy and the issue is whether a court should find the policy invalid and not whether a court should expand the written terms of the policy. Without clear precedent, we refuse to find that Tennessee law has "evolved" to the point of ignoring the requirements of a contract under the circumstances presented by this case.
 
 
 8
 We note that the Tennessee Supreme Court blurred the distinction between Henry and Beasley by applying the Henry rule in Vulcan Life & Accident Insurance Co. v. Segars, 391 S.W.2d 393 (Tenn. 1965). In Vulcan Life, the court held that the insurer could not invoke the sound health requirement of its policy as a defense when its agent, a bank president, failed to inquire into the insured's health before issuing a certificate of credit life insurance. Id. at 395-96. Vulcan Life, however, is readily distinguishable from this case because it involved a credit life insurance policy which did not require an application. Id. at 394-95.
 
 
 9
 We conclude that the district court did not err in finding as a matter of law that the defendant was entitled to summary judgment. The facts in this case are identical to those in Beasley, except for the plaintiff's signing of the application before the agent completed it. If, as Beasley held, the plaintiff had a duty "to learn the contents of a written contract before he signs it," then he could not escape this duty by signing the contract before its contents were written.
 
 III.
 
 10
 The Equitable argued in its Summary Judgment Motion Memorandum that its rescission of the disability insurance policy did not violate the policy's incontestability clause. Campbell did not respond to this argument until he filed a Fed. R. Civ. P. Rule 59 Motion to Alter or Amend the Judgment after the district court granted summary judgment. The district court held that Rule 59 Motions could not be used to raise legal arguments that could have been heard "during the pendency of the previous motion." The standard of review is whether the district court abused its discretion, McMahon v. Libbey-Owens-Ford Co., 870 F.2d 1073, 1078 (6th Cir. 1989), and we find that the district court did not abuse its discretion in denying this Motion.
 
 IV.
 
 11
 Campbell originally filed suit in the Chancery Court of Hamilton County, Tennessee, but The Equitable removed the case to the United States District Court for the Eastern District of Tennessee. Campbell's arguments that the district court improperly allowed The Equitable to amend its Notice of Removal lack merit.
 
 
 12
 First, Campbell argues that 28 U.S.C.A. Sec. 1446(b) (West 1994) requires a defendant to file its Notice of Removal within thirty days of receipt of the initial complaint or service of summons, and that The Equitable improperly amended its Notice after thirty days had elapsed. Under Fed. R. Civ. P. 15(a), after service of a responsive pleading, a party "may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." Under 28 U.S.C.A. Sec. 1653 (West 1994), "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This court has allowed defendants to cure defective allegations regarding diversity jurisdiction in their removal petition "where such jurisdiction did in fact exist [and] after the time for removal had expired." Tech Hills II Assocs. v. Phoenix Home Life Mutual Ins. Co., 5 F.3d 963, 969 (6th Cir. 1993). As discussed below, we hold that The Equitable merely cured defective allegations of diversity jurisdiction and that such jurisdiction existed at the time of the original Notice.
 
 
 13
 Next, Campbell alleges two major defects in the original Notice of Removal. First, The Equitable's original Notice stated the residency of the plaintiff as Tennessee and the place of organization and principal place of business of the defendant as New York; The Equitable amended the notice to state that "Plaintiff is a citizen of the State of Tennessee" and "Equitable is a citizen of the State of New York." Thus, The Equitable's amendment merely restated information already provided in the original Notice and, therefore, the amendment was proper. See Tech Hills II Assocs., 5 F.3d at 968-69.
 
 
 14
 Second, the original Notice alleged that Campbell had been disabled for twelve months and anticipated disability to "exceed" another twelve months, that the contract rate was $2,500 per month, and that Campbell also asked for a 25 percent penalty. The minimum total amount, $75,000, exceeded the jurisdictional amount requirement of $50,000. However, Campbell had already received eight monthly payments, which lowered the minimum amount. In the Amended Notice to Remove, The Equitable included the claim that "[t]he value of the policy exceeds Fifty Thousand Dollars ($50,000) and the amount in controversy exceeds Fifty Thousand Dollars ($50,000)." Campbell maintains that adding the allegation that "[t]he value of the policy exceeds [$50,000]" effectively changed the substance of the allegation. The Seventh Circuit has held that
 
 
 15
 [f]uture benefits payable under a contract of insurance may be used to compute the sum in controversy for jurisdictional purposes only when the validity of the insurance policy itself, and not merely the presence or absence of conditions measuring the insurer's liability thereunder, is the matter in dispute.
 
 
 16
 Keck v. Fidelity & Casualty Co. of N.Y., 359 F.2d 840, 841 (7th Cir. 1966). We adopt this reasoning in this case and hold that the amendment was proper because the validity of the policy was in dispute.
 
 V.
 
 17
 For the forgoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendant.
 
 
 18
 JOINER, District Judge, concurring in part and dissenting in part.
 
 
 19
 I do not believe that the outcome of this case is controlled by Beasley v. Metropolitan Life Insurance Co., 229 S.W.2d 146 (Tenn. 1950), and its progeny. Our task under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), is to determine what we believe is the current status of Tennessee law and to reach a result as close as possible to that which would be reached by the Tennessee Supreme Court today. The status of Tennessee law has shifted since Beasley was decided in 1950. The more recent cases indicate that an insurance company cannot refuse to pay on a policy when the agent of the company erroneously represents the scope of coverage afforded by the policy or fails to disclose to the insurer all facts available to him which are pertinent to the issuance of the policy. See Bill Brown Construct. Co. v. Glens Falls Ins. Co., 818 S.W.2d 1 (Tenn. 1991); Vulcan Life & Accident Ins., Co. v. Segars, 391 S.W.2d 393 (Tenn. 1965). Based on these more recent cases, I would hold that Equitable is estopped from rescinding the policy based upon information possessed by Equitable's agent, but contrary to the agent's representation to Campbell, not disclosed in the insurance application. Thus, I dissent only from Part II of the majority's opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation