# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 2, 2002 Session

## CINDERELLA FERRELL OSBORNE v. MOUNTAIN LIFE INSURANCE COMPANY

**Appeal from the Circuit Court for Hawkins County**
**No. 10123     John K. Wilson, Judge**

**FILED FEBRUARY 19, 2003**

**No. E2002-01023-COA-R3-CV**

---

This appeal raises a question of coverage under a policy of credit life insurance. The Plaintiff, Cinderella Ferrell Osborne, brought this action against Mountain Life Insurance Company ("Mountain Life"), alleging that it wrongfully denied her claim under a credit life insurance policy on the life of her deceased husband, Kenneth Scott Osborne. The Trial Court granted Mountain Life's motion for summary judgment, finding that Mr. Osborne died within six months after the effective date of coverage, from a disease for which he received medical treatment within six months of the effective date of the insurance. The Court held that these facts triggered a limitation of liability provision in the policy, which limited Ms. Osborne's recovery to the premium paid. We reverse the judgment of the Trial Court.

**Tenn R. App. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Douglas P. Jenkins, Rogersville, for Appellant, Cinderella Ferrell Osborne

Lewis S. Howard and Delicia R. Bryant, Knoxville, for Appellee, Mountain Life Insurance Company

## OPINION

Both parties agree that the relevant facts in this case are undisputed. It appears that in January of 1997, Mr. Osborne purchased a tractor and some other farm equipment from Jones Tractor in Rogersville, Tennessee. Ms. Osborne's brief states as follows about this transaction:

> Kenneth Scott Osborne first incurred the indebtedness in question in
> January, 1997. At that time, Mountain Life issued a certificate of

insurance on his one-year, single-pay note. The note was subsequently renewed January 1998, January 1999, and January 2000.

The initial note which was executed in January 1997 is not included in the record, nor is there any indication of the amount of this note. Apparently this note was executed in favor of Jones Tractor and assigned to First Community Bank of East Tennessee the same day.

Mountain Life's brief states as follows regarding the transactions that subsequently occurred:

> [Mountain Life] has an agreement with First Community Bank of East Tennessee to provide group credit life and credit accident and health insurance to certain customers of the Bank in connection with financing and loan transactions.
> Prior to January 13, 2000, Mr. Osborne had credit life insurance with [Mountain Life] as a result of issuance of Group Insurance Certificate No. 01286122 which was issued on February 25, 1999. However, this certificate was cancelled on January 13, 2000 and a partial premium refund in the amount of $19.01 was issued.
> On January 13, 2000, Kenneth S. Osborne was issued Group Insurance Certificate No. 40101984 providing group credit life insurance in connection with a Retail Installment Contract and Security Agreement executed in favor of Jones Tractor in Rogersville, Tennessee. The Installment Contract was assigned to First Community Bank the same day.

Mr. Osborne died on March 21, 2000. The cause of his death was described as "sepsis due to metastatic gastric cancer." Mr. Osborne received medical treatment for metastatic gastric cancer beginning in November of 1999.

Ms. Osborne filed this action on December 15, 2000, after Mountain Life denied her claim under the policy issued January 13, 2000. Mountain Life answered and filed a motion for summary judgment, relying upon the following provision, which it alleged was part of the policy agreement between Mountain Life and First Community Bank, and also included in the Group Insurance Certificate issued to Mr. Osborne:

> The Company's liability is limited to the premiums paid by the Debtor if liability arises by reason of death occurring within six months after the effective date of coverage and resulting from a disease, injury, or condition of health for which the debtor was hospitalized or received medical or surgical treatment or advice within six months of the effective date of the debtor's insurance.

The Trial Court found this provision applicable and, because Mountain Life had refunded the amount of the premium, granted summary judgment in favor of Mountain Life. Ms. Osborne appeals, raising the issue of whether the Court erred in determining that Mountain Life is entitled to summary judgment as a matter of law.

Ms. Osborne argues that the "effective date of coverage" and "effective date of insurance" should be construed as the date on which the insurance covering the *initial* indebtedness became effective, *i.e.*, in January of 1997. She states in her affidavit:

> The effective date of the insurance coverage at issue in this matter, so far as my husband and I understood, was on or about January 1997 when my husband made the subject notes to Jones Tractor Company. All my husband, Kenneth Scott Osborne, ever did was renew the same notes at Jones Tractor. To my knowledge, he never talked to the insurance company or the bank.

Mountain Life counters this argument with the affidavit of Mary E. Bunting, its Vice President, which states as follows:

> Group Insurance Certificate No. 40101984 [issued January 13, 2000] was not a renewal or continuation of any prior issuance issued to Kenneth S. Osborne and such Certificate could not have been issued unless and until the prior Certificate (No. 01286122) had been cancelled.

Mountain Life, in support of its assertion that the insurance certificate issued on January 13, 2000 was a certification of an entirely "new" policy, unrelated to the previous certificates of insurance sent to Mr. Osborne in prior years after his renewals of the underlying note and payment of premiums, cites T.C.A. 56-7-907, which states in relevant part:

> (b)(1) . . .If insurance on the life of a debtor is provided under a group
>
> policy, the term of such insurance shall not be continued for a period greater than the duration of the indebtedness.
>
>         *                *              *
>
> (c) If the indebtedness is discharged due to prepayment, the credit life insurance in force shall be terminated. If the indebtedness is discharged due to renewal or refinancing prior to the scheduled maturity date, the insurance in force shall be terminated before any new insurance may be issued in connection with the renewed or refinanced indebtedness. In all cases of termination prior to scheduled maturity, a refund shall be paid or credited as provided in § 56-7-909.

We do not find it necessary to reach the question of whether the insurance at issue was "new"insurance of such a character as to trigger the requirement of T.C.A. 56-7-907(c) that the "insurance in force" be terminated. This is because, even assuming (without deciding) that Mountain Life is correct in its assertion that the January 13, 2000, issuance was an entirely new policy, under the undisputed facts of this case, we believe Mountain Life must be held to be estopped from relying on the limitation of liability provision at issue.

In the case of *Vulcan Life & Accident Ins. Co. v. Segars*, 391 S.W.2d 393 (Tenn. 1965), the insurer relied upon a provision contained in the certificate of insurance which provided that "this insurance shall not take effect hereunder unless the insured-debtor named herein is alive and in sound health. . ." The insured, Mr. Segars, had suffered a "severe heart attack" less than one month before applying for the credit life insurance at issue in the case. Two days after the issuance of the insurance certificate, Mr. Segars died of another heart attack.

The Supreme Court stated that

> It is undisputed the agent, Williams, made no inquiry as to the condition of insured's health. Williams told the insured the insurance would pay the note in the event of his death if unpaid at that time. Nor did Williams call to the insured's attention the condition precedent of sound health as provided in the certificate.
>
> \*             \*             \*
>
> We think it was negligence for the agent to issue the certificate of insurance without inquiring as to the insured's health. He knew or should have known the insurer would deny liability in the event it was determined the insured was not of sound health when the policy was issued. He took that chance which resulted in this lawsuit. His act was the act of the insurer and the company should be the party to suffer.

*Segars*, 391 S.W.2d at 396, 397. The *Segars* court further stated as follows:

> With respect to such a situation it is said in Vance, Insurance, 3rd Ed., Anderson, Section 89, page 540:
> "After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a

policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer. The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows is to be used for specific purpose impliedly warrants that the article furnished is suitable for that purpose."

*Segars*, 391 S.W.2d at 397-98.

In the present case, the insurance certificate issued to Mr. Osborne is not provided in the record before us. The record does contain the following relevant excerpts from Ms. Bunting's deposition:

> Q: Was Mr. Osborne required to make any formal application for this certificate? And when I say "this certificate," I mean 40101984, the one that we're going to talk about?
>
> A: No, he was not.
>
> Q: Okay. Was he required to give any information about his health or the status of his, you know, physical well being at that time?
>
> A: No.
>
> *     *     *
>
> Q: Would Mr. Osborne have been required to sign anything or have been given anything, for that matter, that would have informed him of the exclusions or exemptions in this policy?
>
> A: He wouldn't sign anything, but he would receive the customer copy of the certificate that was issued.

In this case, as in *Segars*, there was no misrepresentation on the part of the insured as to the condition of his health. As the *Segars* court found in that case, "[i]nsured had no reason to believe the policy contained the provision." Indeed, Mr. Osborne had no reason to expect that circumstances would be any different from the previous instances where he had renewed the note, paid the premium and received the life insurance coverage. Under *Segars*, we find that it was incumbent upon Mountain Life to inquire about the condition of Mr. Osborne's health in order for it to subsequently rely on the "pre-existing" health condition provision, which was not provided in any application document or other paper required to be signed by Mr. Osborne.

The record does contain the document which Mr. Osborne was required to sign, which is styled a "retail installment contract and security agreement." It is marked "renewal" and lists the amount financed as $23,850.96, which includes an insurance premium for the life insurance at issue in the amount of $329.33. The agreement calls for a single payment "due at maturity on January 12, 2001" in the amount of $26, 994.65. A box for "credit life" insurance is checked, and Mr. Osborne's handwritten initials appear on the line beside the word "insured." Pursuant to the above analysis, we hold that under the facts of this case, Mountain Life is estopped to rely upon the pre-existing health condition limitation of liability provision, and find that Ms. Osborne, as surviving widow and sole heir, is entitled to the proceeds of the insurance policy, less the amount of the already-refunded premium.

For the foregoing reasons the judgment of the Trial Court is reversed and the cause remanded for collection of the amount owing under the policy, and of the costs below which are, as are costs of appeal, adjudged against the Appellee, Mountain Life Insurance Company.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE