IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 7, 2004 Session

**CINDERELLA FERRELL OSBORNE v.
MOUNTAIN LIFE INSURANCE COMPANY**

**An Appeal by Permission from the Court of Appeals
Circuit Court for Hawkins County
No. 10123     John K. Wilson, Judge**

---

**No. E2002-01023-SC-R11-CV - Filed March 12, 2004**

---

We granted review to determine whether the defendant credit life insurance company was estopped from relying on policy language which excluded coverage if an insured received medical treatment for and died from a disease within six months of the date of coverage. The trial court granted summary judgment to the credit life insurance company based on the policy exclusion. The Court of Appeals reversed, holding that the defendant was estopped from relying on the policy exclusion and ordering payment of the policy benefits to the plaintiff, widow of the insured. After reviewing the record and applicable authority, we conclude that the trial court correctly granted summary judgment for the defendant and that the Court of Appeals erred in holding that the defendant was estopped from relying on the policy exclusion. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Appeals
Reversed and Judgment of the Trial Court Reinstated**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Lewis S. Howard, Jr. and Heather R. Gunn, Knoxville, Tennessee, for the Appellant, Mountain Life Insurance Company.

Douglas T. Jenkins, Rogersville, Tennessee, for the Appellee, Cinderella Ferrell Osborne.

# OPINION

## Background

On January 13, 2000, Kenneth Osborne executed a "Retail Installment Contract and Security Agreement" with Jones Tractor and Implement Company, ("Jones Tractor"), in Rogersville, Hawkins County, Tennessee, which renewed two existing notes, obligated Osborne to make payment of the principal and interest of $26,994.65 at the end of one year, and pledged as security a tractor and related equipment. While executing the agreement, Osborne also checked a box on the installment contract indicating that he wished to purchase group credit life insurance for one year in an amount equal to the value of the notes and agreed to pay a premium of $329.33, which was included in the total obligation.[1]

Jones Tractor immediately assigned the notes and security agreement to First Community Bank of East Tennessee ("the Bank") under a separate agreement between the Bank and Jones Tractor. The Bank, in turn, had an agreement with the defendant, Mountain Life Insurance Company ("Mountain Life"), whereby Mountain Life would provide group credit life insurance for the Bank's debtors and the Bank would act as Mountain Life's agent for a forty percent (40%) commission on the insurance premiums collected. The record contains no evidence, other than the retail contract, of any communication between Jones tractor and Kenneth Osborne about the loan renewal or the purchase of the credit life insurance. It is undisputed that Osborne had no communication with the Bank or Mountain Life about the purchase of the credit life insurance.

The master insurance policy between the Bank and Mountain Life included the terms that governed each credit life insurance certificate. An "endorsement" to the policy stated:

> The [insurer's] liability is limited to the premiums paid by the [insured] if liability arises by reason of death occurring within six months after the effective date of coverage and resulting from a disease, injury, or condition of health for which the [insured] was hospitalized or received medical or surgical treatment or advice within six months of the effective date of the [insured's] insurance.

The policy also stated that the insurance "of any Debtor will automatically become effective when the Creditor collects the required premium."

Kenneth Osborne was diagnosed with metastic gastric cancer in November of 1999, received medical treatment thereafter, and died of cancer-related sepsis on March 21, 2000. His widow, Cinderella Ferrell Osborne, sought payment of the insurance certificate benefits from Mountain Life

---

[1] On appeal, the plaintiff asserts that Osborne had entered into a similar agreement with Jones Tractor and had purchased the group insurance and renewed the note in the same manner in January of 1997, 1998, and 1999; these prior agreements, however, are not in the record.

to apply to the bank loan. Mountain Life declined to pay the benefits based on its policy coverage exclusion but returned the premiums paid for the group credit life insurance certificate to the Bank.[2]

The plaintiff, Cinderella Osborne, filed suit alleging that Mountain Life improperly refused to pay the benefits provided in the credit life insurance certificate. Mountain Life denied the allegations in the complaint and filed a motion for summary judgment relying upon the coverage exclusion contained in the policy and the certificate. Mountain Life contended that the certificate had been issued on January 13, 2000, and that the insured, Kenneth Osborne, died on March 21, 2000, from a disease for which he was medically treated within six months of the issuance of the certificate. The plaintiff responded that the exclusion did not apply because the effective date of the insurance coverage was when Kenneth Osborne first executed the installment contract and security agreement and obtained group credit insurance "on or about January of 1997."

The motion for summary judgment was supported by an affidavit from Mary Bunting, a Senior Vice President for Mountain Life, who stated that Kenneth Osborne had been issued Mountain Life credit life insurance certificate number 40101984 on January 13, 2000. Bunting stated that this certificate "was not a renewal or continuation of any prior issuance" and "could not have issued unless and until the prior Certificate [] had been cancelled." She stated that Kenneth Osborne had been issued Mountain Life insurance certificate number 01286122 on February 25, 1999, and that this prior certificate "shows on its face a cancellation date of January 13, 2000," i.e., the date the new certificate was issued.

Cinderella Osborne furnished an affidavit stating that she believed the effective date of the insurance coverage was on or about January of 1997 when her husband first executed the notes to Jones Tractor. She also stated that he had renewed the same notes at Jones Tractor every year since 1997 but "never talked to the insurance company or the bank." Mrs. Osborne did not say whether or not they received a copy of the January 13, 2000 Mountain Life credit life insurance certificate. Mary Bunting, however, testified in a deposition that Mountain Life's policy was to send a copy of the certificate to each insured. Bunting also testified that the certificate sent to each insured contained the "six-month" disease exclusion provision which was also contained in the endorsement to the master policy.

The trial court granted Mountain Life's motion for summary judgment without making specific findings of fact or conclusions of law. The Court of Appeals reversed, holding that Mountain Life was estopped from relying on the exclusion because it had not inquired about Osborne's health when he purchased the credit life insurance certificate. The Court of Appeals ordered Mountain Life to pay the policy proceeds and pretermitted the issue as to the effective date of the certificate.

We granted review.

---

[2] The insurer was obligated to return premiums paid to it should it exercise its rights pursuant to the policy exclusion.

**Analysis**

We first consider the issue of the effective date of the credit life insurance certificate, which was pretermitted by the Court of Appeals, because if the plaintiff is correct that the policy exclusion does not apply, the estoppel analysis is irrelevant.

The plaintiff, Cinderella Osborne, contends that the effective date of the Mountain Life credit life insurance coverage was the date upon which her husband executed the first note to Jones Tractor and purchased the credit life insurance in January of 1997. The plaintiff argues that the insurance coverage was continuous and that the policy exclusion was, therefore, not applicable when her husband died over three years later. The plaintiff argues alternatively that the Court of Appeals was correct in holding that principles of estoppel barred the defendant from relying on its policy exclusion.

The defendant, Mountain Life, contends that the effective date of the credit life insurance certificate was January 13, 2000, and that Mr. Osborne's death on March 21, 2000, fell within the six-month policy coverage exclusion. Mountain Life also argues that the Court of Appeals erred in holding Mountain Life was estopped from relying upon the coverage exclusion because the elements of equitable estoppel were not established by the facts in this case and because the issue of estoppel was not raised or argued by the plaintiff in the trial court or the Court of Appeals.

We begin our analysis by determining the effective date of the Mountain Life credit life insurance certificate issued to Kenneth Osborne. Because we construe insurance contracts "in the same manner as any other contract," the provisions must be given their "plain, ordinary and popular sense." Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (Tenn. 2000). Where provisions that purport to limit insurance are ambiguous, however, they must be construed against the insurance company and in favor of the insured. Id. at 815.

In applying these principles, we observe that the record on appeal contains only the master policy between the Bank and Mountain Life and the Retail Installment Contract and Security Agreement executed to Jones Tractor by Kenneth Osborne on January 13, 2000.[3] The master policy states that the insurance "will automatically become effective when the Creditor collects the required premium." The retail installment contract executed on January 13, 2000, reflects that Osborne was charged a premium of $329.33 for the credit life insurance and that the "term" was "12 months." Accordingly, a plain and ordinary interpretation of these contract provisions indicates that the insurance certificate would become effective on January 13, 2000, and would remain in effect for 12 months.

In addition to the retail contract provisions, it was undisputed that when Kenneth Osborne executed the installment contract each year, he purchased a new insurance certificate each year. Indeed, the plaintiff asserted that her husband did so in January of 1997, 1998, 1999, and 2000. For

_____

[3] A copy of the credit life certificate is not in the record.

example, Mary Bunting testified that upon the issuance of a new insurance certificate, the coverage extended for the length of the notes, i.e., 12 months, and the insurance certificate for the prior year was cancelled. She testified that when Osborne was issued the insurance certificate on January 13, 2000, the insurance certificate for 1999 was cancelled. Bunting's testimony was also consistent with language in the master policy that stated that the "insurance on a debtor will cease to be in force" on the termination of the debt and that "[a]ny renewal or refinancing of the Agreement will be deemed a new Debt."

In sum, there is clearly no support in the record for the argument that there was a single insurance policy under which coverage became effective in January of 1997 and remained effective indefinitely.

Our conclusion that the effective date of the insurance certificate in question was January 13, 2000, is also consistent with the language of Tennessee Code Annotated section 56-7-907(c) (2000), which governs the issuance and terms of credit life insurance in Tennessee:

> If the indebtedness is discharged due to prepayment, the credit life insurance in force shall be terminated. If the indebtedness is discharged due to renewal or refinancing prior to the scheduled maturity date, the insurance in force shall be terminated before any new insurance may be issued in connection with the renewed or refinanced indebtedness.

(Emphasis added).

As Mountain Life contends, Tennessee Code Annotated section 56-7-907 provides that each credit life insurance certificate has a distinct period of coverage.[4] The statute also plainly states that when a debt is renewed, "the insurance in force shall be terminated before any new insurance may be issued . . . ." Tenn. Code Ann. § 56-7-907(c) (2000). In sum, when a debt is renewed or refinanced, a new credit life insurance certificate with its own effective date must then be issued. Id.[5]

We therefore hold that the effective date of the Mountain Life insurance certificate was January 13, 2000. Because it is undisputed that the deceased's medical treatment for cancer and his resulting death occurred within six months of the effective date, the Mountain Life policy exclusion applies unless the Court of Appeals was correct that the doctrine of equitable estoppel barred Mountain Life from relying on the exclusion.

---

[4] Substantially similar language appears in the master policy between the defendant and the Bank.

[5] We note that Tennessee Code Annotated section 56-7-906(f) also requires a non-contestable clause in a credit life insurance policy after two years, which was not applicable in this case because the debt and the insurance issued was renewed for one-year periods year after year.

Accordingly, we now must determine whether the Court of Appeals correctly held, sua sponte, that the defendant was estopped from relying upon the coverage exclusion in the policy as a defense to liability.[6] The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

Consumer Credit Union v. Hite, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990) (quoting Callahan v. Town of Middleton, 292 S.W.2d 501, 508 (Tenn. Ct. App. 1954) (citation omitted)). Equitable estoppel also requires the following elements with respect to the party asserting estoppel:

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

Id.

In applying equitable estoppel in this case, the Court of Appeals relied upon Vulcan Life and Accident Insurance Co. v. Segers, 391 S.W.2d 393 (Tenn. 1965). In that case, no written application or physical examination for insurance was required. The Bank President, who was making the loan and also serving as the credit life insurance agent, did not tell the insured about an exclusion in the policy that removed the defendant's liability in cases where an insured was not "in sound health." Id. at 394. Nor did he make an inquiry about the insured's health even though the insured had suffered a recent heart attack. Instead, he "explained . . . to [the insured] that in case of his death while the note was still unpaid, the insurance would pay the note." Id. at 396. Under those facts, this Court concluded that the insurance company had waived the "sound health policy exclusion" and was estopped from relying on it when the insured died of a second heart attack only two days after issuance of the insurance policy. Id. at 395, 398.

---

[6] It is true that not raising or briefing the issue before the trial court or the Court of Appeals is grounds for waiver of review. See Alexander v. Armentrout, 24 S.W.3d 267 (Tenn. 2000). However, we elect to examine this issue on the merits.

By contrast, in the present case, Kenneth Osborne obtained the credit life insurance without any direct contact or communication with the defendant, Mountain Life, or the Bank, who was Mountain Life's agent. Mr. Osborne's only contact was with Jones Tractor. The record contains no evidence that Mountain Life or its agents made any representation at all with respect to the insurance, much less a representation such as occurred in Vulcan Life that "the insurance would pay the note" without exception in the event of his death. Id. at 396 (emphasis added). Moreover, the record also contains no evidence that the defendant or its agents concealed material information with regard to the specific provisions of the policy.[7] See Consumer Credit Union, 801 S.W.2d at 825.

Although the Court of Appeals emphasized Mountain Life's failure to inquire about Osborne's health when issuing the credit life insurance policy, that failure does not establish grounds for equitable estoppel. There must be a false representation or concealment of material facts, and the other elements of estoppel must be present. See id. Tennessee Code Annotated section 56-7-907(b)(2)(B) provides that the insurance company may ask for evidence of insurability as to a debtor's health if the insurance is more than $25,000.00, but there is no requirement to do so. The record contains no evidence that Mountain Life or its agents had knowledge of Kenneth Osborne's serious illness. The record also contains no evidence that the insured, Kenneth Scott Osborne, relied upon or suffered prejudice from representations or the lack of inquiries made by the defendant or its agents. In short, the elements required for the application of equitable estoppel are simply not present in this case.

Accordingly, we hold that the Court of Appeals erred in concluding, sua sponte, that the defendant, Mountain Life, was estopped from relying on its policy exclusion and in ordering payments of policy benefits under the circumstances of this case.

## Conclusion

After reviewing the record and applicable authority, we conclude that the trial court correctly granted summary judgment for the defendant and that the Court of Appeals erred in holding that the defendant was estopped from relying on the policy exclusion. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. Costs on appeal are taxed to the appellee, Cinderella Ferrell Osborne, for which execution shall issue if necessary.

E. RILEY ANDERSON, JUSTICE

---

[7] Although we are concerned about the practice of having no contact at purchase between the insured and the insurance company and the failure to include the terms of an insurance policy and its exclusions along with the insurance application, we cannot conclude that this amounts to concealment by the defendant. Had the insured made inquiry about the specific terms of the coverage at the time of purchase, however, the failure to notify him of applicable exclusions may have provided a basis for estoppel, assuming the other elements had been present.