WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE
Before the Court is Defendants' Partial Motion to Dismiss Any Claim for Specific Performance in Plaintiffs' Amended Complaint and For an Order Declaring Plaintiffs' Lien Lis Pendens Invalid. (Doc. No. 25.) Plaintiffs have filed a response in opposition.
*685 (Doc. No. 29.) For the following reasons, Defendants' motion is denied.[1]
I. Background
Plaintiffs Domus Development, LLC ("Domus"), MMA Investments, LLC ("MMA"), and Sonnyman, LLC ("Sonnyman") (collectively "Plaintiffs") have worked together for a number of years to build student-housing projects throughout the Southeast. (Doc. No. 24 at 4.) In March 2016, Plaintiffs sought to develop a student-housing project at Tennessee Technological University ("Tennessee Tech") in Cookeville, Tennessee and met with Defendant Wayne Cravens, a financial advisor, about acquiring real estate in Cookeville. (Id. at 4-5.) Plaintiffs and Cravens discussed the potential project for several months, and, in August 2016, representatives from Sonnyman and MMA traveled to Cookeville and met with Cravens and Defendant Justin Cumby, owner of Defendant Titan Development, LLC ("Titan"). (Id. ) Cravens and Cumby showed Plaintiffs two parcels of land suitable for student-housing, which were located near Tennessee Tech's campus (the "Property"). (Id. )
In February 2017, Titan acquired the Property for a total purchase price of $1 million. (Id. at 6.) Cravens and Cumby then traveled to Fort Worth, Texas in May 2017 to meet with Plaintiffs. (Id. ) During the meeting, Cravens and Cumby, on behalf of themselves and Titan, communicated that they wanted to form a formal partnership with Plaintiffs to develop student-housing on the Property. (Id. ) Plaintiffs, Cravens, and Cumby orally agreed on: (1) the essential terms of the partnership; and (2) each partner's contribution to the partnership (money, skill, labor). (Id. ) Specifically, the parties agreed that: (1) Sonnyman would fund the partnership's pre-development costs related to efforts to rezone the Property for the student-housing project; (2) Titan would contribute the Property in fee simple to the partnership; and (3) Domus would lead the partnership's local efforts in Cookeville to rezone the Property. (Id. at 7.) The parties also agreed to memorialize the pertinent information about the partnership in a financing "pitch book" to attract additional investors for the project. (Id. )
The parties then began pre-development activities, including preparing rezoning efforts, compiling information for the pitch book, and creating architectural and engineering designs. (Id. at 7-8.) The parties agreed to name the student-housing development "Aerie," and met in Cookeville in July 2017 to further discuss the development. (Id. ) During this time, the parties contracted with HFF, Inc. ("HFF"), a provider of capital markets and brokerage services, and HFF created the "pitch book" necessary to attract additional funding. (Id. at 8-9.) The pitch book contained certain information about the parties' partnership, including that: (1) the parties were in "a partnership led by Domus Development" intended to develop the Property; (2) Domus was the "key principal" of the partnership; (3) other "key principals"
*686 included representatives of MMA, Cravens, and Cumby; and (4) the Property had been purchased by the parties and rezoning efforts were ongoing. (Id. )
Domus then met with Defendant Clinton Engineering, a local engineering firm in Cookeville, about providing limited civil engineering services with respect to the Aerie project. (Id. at 10.) Clinton Engineering provided some preliminary plans to Domus, and Domus and Clinton Engineering agreed on proposals for more work in the future. (Id. at 10-11.) After creating these plans ("Aerie Plans"), Domus met with additional stakeholders in the project, including the president of Tennessee Tech, members of Cookeville's planning and zoning commission, and members of Cookeville's City Council, to secure additional support for the Aerie development. (Id. at 11.) As a result, in November 2017, Domus, Cravens, and Cumby, on behalf of Titan, appeared before the Cookeville Planning Commission and requested that the Property be rezoned from single family residential to multi-family residential. (Id. at 12.) Cravens confirmed at the meeting that the Property was being developed by the partnership according to the Aerie Plans. (Id. ) At the conclusion of the November 2017 meeting, the Cookeville Planning Commission approved the request to rezone the Property. (Id. at 13.) Domus attended a final meeting on January 4, 2018, where it obtained final zoning approval. (Id. )
Plaintiffs allege that, once the rezoning efforts were complete, Titan and Cravens began shopping the Property to other third-party developers. (Id. at 14-15.) When confronted by Plaintiffs, Defendants refused to perform pursuant to the agreed-upon partnership. (Id. at 15.) Plaintiffs then filed the instant lawsuit seeking a declaratory judgment that a partnership was formed among the parties, with an agreement to develop the property, and Defendants breached that partnership agreement by engaging in negotiations to sell the property to a third-party and otherwise failing to proceed with the development. (Id. at 18-21.) Plaintiffs also allege claims of unjust enrichment, promissory estoppel, misappropriation of trade secrets, trademark infringement, conversion, breach of contract (as against Clinton Engineering), and civil conspiracy. (Id. at 16-30.) Moreover, based on its claims that Titan intended to contribute the Property to the partnership, Plaintiffs, on June 20, 2018, filed a lien lis pendens on the Property based on their complaint. (Doc. No. 25-1.) Defendants Titan, Cravens, and Cumby then filed the instant partial motion to dismiss. (Doc. No. 25.)
II. Defendants' Partial Motion to Dismiss
In their partial motion to dismiss, Defendants argue that Plaintiffs' conclusory allegation that they have an interest in the Property is barred by Tennessee's Statute of Frauds because Plaintiffs cannot identify any written document memorializing an agreement to convey the Property to the alleged partnership. (Doc. No. 26 at 1.) For this same reason, Defendants also argue that any claim for which Plaintiffs request specific performance as a remedy should be dismissed, as there is no writing establishing what specific performance could possibly be sought. (Id. at 6.) Further, Defendants contend that, because there is no writing related to the alleged conveyance of the Property to the partnership or other facts demonstrating that the Property was conveyed to the partnership, Plaintiffs cannot assert equitable estoppel to prevent application of the Statute of Frauds. (Id. at 8-11.)
Moreover, Defendants argue that Plaintiffs' lien lis pendens on the Property is *687 defective because: (1) it does not state the amount of the lien "sought to be fixed"; and (2) Plaintiffs have no valid claim to any ownership interest in the Property. (Id. at 4-5.) Accordingly, Defendants request that the Court declare the lien lis pendens invalid so that the Property is no longer encumbered. (Id. ) The Court will address the lien lis pendens argument first, and then turn to the Defendants' argument regarding the Statute of Frauds, equitable estoppel, and specific performance.
III. Analysis
A. Federal Rule of Civil Procedure 12(b)(6)
In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955 ). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.
B. Lien Lis Pendens
Under Tennessee Code Annotated § 20-3-101, litigants may file a lis pendens lien on real estate pending the outcome of litigation. The relevant statute provides that:
When any person, in any court of record, ... seeks to fix a lien lis pendens on real estate ... that person shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to the suit, a description of the real estate affected, its ownership and a brief statement of the nature and amount of the lien sought to be fixed.
Tenn. Code Ann. § 20-3-101(a). Subsection (b) merely states that until such abstract is filed, "the rights of bona fide purchasers and encumbrancers, for value, of the realty, or any interest in the realty ... shall not be affected." Id. at (b).
"The filing of a notice of lis pendens is merely a procedural step by which a plaintiff provides constructive notice to third parties of his claim against the subject property." Oliver v. Upton, No. 01A01-9705-CH-00197, 1998 WL 151388, at *5 (Tenn. Ct. App. Apr. 3, 1998) ; see also Myers v. U.S. Bank Mort., No. 12-3032-STA-TMP, 2013 WL 12043366, at *1 (W.D. Tenn. Feb. 6, 2013) ("The primary purpose of a lien lis pendens is to put third parties on notice of the existence of the claimant's interest in the property so as to prevent further alienation."). As the Tennessee Court of Appeals has explained:
By filing a notice of lis pendens at the commencement of a lawsuit, a plaintiff provides notice to the world of the existence of a pending action affecting the title or right to possession of the subject property. Prospective purchasers and *688 encumbrancers are thereby put on notice that the plaintiff has a claim which, if successful, would adversely affect their title to the property. When the suit on which the notice of lis pendens terminates, however, the right to subject subsequent purchasers and encumbrancers to the claims described in the action on which the lis pendens is based comes to an end. Accordingly, a lis pendens terminates upon the conclusion of the underlying lawsuit, whether by dismissal or entry of a final decree ... [o]nce the trial court enter[s] its final judgment, the purpose of the lis pendens, to notify potential purchasers or encumbrancers of the pending litigation, no longer exist[s].
Oliver, 1998 WL 151388, at *5 ; see also 51 Am. Jur. 2d Lis Pendens § 34 ("It is generally agreed that dismissal of an action pursuant to a judgment that makes no provision for further litigation terminates operation of the doctrine of lis pendens with respect to that action."); Gibson's Suits in Chancery § 89 (noting that "[t]he lis pendens and the consequent notice begin from the service of process after the filing of the complaint ... and continue through the entire pendency of the action, and end only when the action is really ended by a final decree."). A suit out of which a lis pendens arose terminates "when the plaintiff [does] not appeal or move to alter or amend the judgment or move for a new trial within thirty days after the order of dismissal was entered." Figlio v. Shelley Ford, Inc., No. 88-15-II, 1988 WL 63497, at *4 (Tenn. Ct. App. June 22, 1988).
Although Defendants urge the Court to strike the instant lien lis pendens for failure to comply with the statute's requirement that the abstract include a brief statement of the "amount of the lien sought to be fixed," the statute itself is "silent about any penalty that could be imposed for failing to comply with its requirements." Blasingame v. Church Joint Venture, L.P., No. 15-1038, 2015 WL 4758933, at *8 (W.D. Tenn. Aug. 12, 2015). Regardless, in the Court's view, the relevant question is not the strength of Plaintiffs' claims to the Property, or whether Plaintiffs' lien lis pendens complies with § 101(a), but, rather, the pendency of this action. Viewed through this lens, Defendants' request for an order declaring the lien lis pendens invalid is clearly premature, and, indeed would not be appropriate until final judgment has been entered, whether as a result of a dispositive motion or otherwise.[2] Accordingly, to the extent that Defendants' Partial Motion to Dismiss requests an order from the Court declaring Plaintiffs' lien lis pendens invalid, the *689 Motion to Dismiss is denied without prejudice as premature.
C. Statute of Frauds, Equitable Estoppel, and Specific Performance
Defendants' remaining arguments primarily center on Tennessee's Statute of Frauds. (Id. at 5-11.) Defendants contend that Plaintiffs present no writing at all to support any alleged agreement by Titan to convey an interest in the Property either (1) to Plaintiffs; or (2) to any alleged partnership that was formed between the parties. (Id. at 6.) Therefore, Defendants argue that any claim Plaintiffs may have for such an interest is barred by the Statute of Frauds. (Id. ) Further, Defendants maintain that Plaintiffs cannot raise the doctrine of equitable estoppel to prevent application of the Statute of Frauds because there is neither a writing evidencing a conveyance of the Property to the partnership, nor other facts demonstrating that the alleged conveyance was contemplated. (Id. at 8-11.) Relatedly, Defendants contend that Plaintiffs cannot assert specific performance as a remedy because there is no writing establishing what specific performance could possibly be sought. (Id. at 5-6.)
As a preliminary matter, the Court notes that the instant case involves title to, and the potential sale of, Tennessee realty and application of the Tennessee Statute of Frauds, which are clearly non-federal matters. See Watson v. McCabe, 527 F.2d 286, 288 (6th Cir. 1975). Under Tennessee law:
No action shall be brought:
Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any least thereof for a longer term than one (1) year ...
Unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.
Tennessee Code Annotated § 29-2-101(a)(4). The purpose of Tennessee's Statute of Frauds is to "protect owners of land from hasty or inconsiderate agreements concerning a valuable species of property, and to guard against misunderstanding as to the nature and extent of such agreements." Johnson v. Haynes, 532 S.W.2d 561, 565 (Tenn. App. 1975).
As noted, in order to satisfy Tennessee's Statute of Frauds, there must be a writing or memorandum signed by the party to be charged setting out the agreement. Tenn. Code Ann. § 29-2-101(a)(4). The writing " 'must contain the essential terms of the contract expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence.' " Brandel v. Moore Mortgage & Ins. Co., 774 S.W.2d 600, 604 (Tenn. Ct. App. 1989) (quoting Lambert v. Home Fed. Svgs. & Loan Ass'n, 481 S.W.2d 770, 773 (Tenn. 1972) ). The contribution of real estate to a partnership is also subject to Tennessee's Statute of Frauds, as it is treated the same as a sale. Curtis v. Rice, No. 01-A-01-9605-CH-00211, 1996 WL 694156, at *4 (Tenn. Ct. App. December 5, 1996) ("The contribution of real estate to a partnership is no different than a sale because it clearly affects the title to the real estate ... [t]o construe such a transaction otherwise is to defeat rather than to carry out the purpose of the statute.").
Nonetheless, Tennessee courts have prevented parties from raising a Statute of Frauds defense pursuant to the doctrine of equitable estoppel. See *690 Thornton v. Marcum, No. E2007-01326-COA-R3-CV, 2008 WL 836368, at *2-3 (Tenn. Ct. App. Mar. 31, 20018) (detailing the history and continued viability of equitable estoppel in Tennessee). The doctrine "may be applied in a number of situations, including to preclude assertion of the Statute of Frauds to avoid an agreement to transfer property." Id. The basis of equitable estoppel is that if a party acts in a certain manner as to indicate an agreement, and another party reasonably relies on that indication of agreement, the first party cannot later assert a contrary position. Id. Specifically, in a typical situation, the party asserting equitable estoppel must show, with respect to the party against whom estoppel is asserted:
(1) Conduct which amount to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;
(2) Intention, or at least the expectation that such conduct shall be acted upon by the other party;
(3) Knowledge, actual or constructive, of the real facts.
Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 774 (Tenn. 2004) ; see also Roach v. Renfro, 989 S.W.2d 335, 339 (Tenn. Ct. App. 1998).
Equitable estoppel also requires that the party asserting estoppel show: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. Osborne, 130 S.W.3d at 774. Determination of whether a party may rely on equitable estoppel requires a significant fact-based inquiry. See Smith v. Smith, No. M2004-00257-COA-R3CV, 2005 WL 3132370, at *2 (Tenn. Ct. App. Nov. 22, 2005) (stating that the "totality of the factual situation" must be considered when determining whether doctrine of equitable estoppel applies). Similarly, whether specific performance is an appropriate remedy requires a fact-intensive analysis. Hometown Folks, LLC v. S & B Wilson, Inc., No. 1:06-cv-81, 2008 WL 918519, at *1 (E.D. Tenn. Apr. 3, 2008) (citing Shuptrine v. Quinn, 597 S.W.2d 728, 730 (Tenn. 1979) ) ("Whether specific performance should be awarded is a determination that ... depends on the facts of each individual case.").
Here, the Court finds the Defendants' arguments regarding the Statute of Frauds, specific performance, and equitable estoppel, require fact-intensive findings and analysis ill-suited for determination in a Rule 12(b)(6) motion. The parties are in agreement that the Tennessee Statute of Frauds applies to the instant action, but differ on whether the doctrine of equitable estoppel prevents Defendants from asserting the Statute of Frauds. (Cf. Doc. Nos. 26 at 8-11, 29 at 11-16.) Taking the allegations in the Amended Complaint as true, at first glance, it certainly appears that Plaintiffs have validly raised the doctrine of equitable estoppel. Defendants allegedly "acted in a certain manner as to indicate an agreement" by stating at the Fort Worth meeting that they desired a formal partnership with Plaintiffs and that their contribution to the partnership would be the Property. Thornton, 2008 WL 836368, at *2-3. In "reasonable reliance on that indication of agreement," Plaintiffs mounted significant efforts to improve the Property, including securing a zoning change of the Property to multi-family residential. Id. Finally, after such improvements were complete, Defendants allegedly asserted a contrary position, namely that no partnership had ever been formed and the Property *691 was theirs to do with as they wished. Id. This factual situation seems tailor-fit to serve as the basis for a claim of equitable estoppel. Id.
Nonetheless, definitively determining whether the doctrine of equitable estoppel applies to the instant action would require the Court to resolve several disputed factual issues, such as (1) the precise conduct of the Defendants, including their specific representations at the partnership meeting; (2) the Defendants' knowledge at the time of their conduct; and (3) Plaintiffs' subsequent actions based upon the conduct of Defendants. See Osborne, 130 S.W.3d at 774 ; Roach, 989 S.W.2d at 339. Likewise, determining the issue of whether specific performance suffices as an appropriate remedy for Plaintiffs' claims would force the Court to confront even more significantly disputed factual issues, including whether a partnership agreement actually existed between the parties. See Williamson Cty. Broad. Co., Inc. v. Intermedia Partners, 987 S.W.2d 550, 554 (Tenn Ct. App. 1998) (stating that specific performance is an equitable remedy appropriate only for breach of a contract or other agreement). These kinds of factual determinations are inappropriate for a Rule 12(b)(6) motion, and the Court believes that the better course of action is to allow development of the factual issues through discovery to aid the Court's ultimate disposition of the issues, whether through additional dispositive motions or at trial. See Moher v. United States, 875 F.Supp.2d 739, 757 (W.D. Mich. 2012) ("These disputed [factual] issues may be decided either at trial or on summary judgment under Fed. R. Civ. P. 56, but cannot be decided on a Rule 12(b)(6) motion to dismiss.")
IV. Conclusion
For the aforementioned reasons, Defendants' Partial Motion to Dismiss Any Claim for Specific Performance in Plaintiffs' Amended Complaint and For an Order Declaring Plaintiffs' Lien Lis Pendens Invalid (Doc. No. 26) is DENIED .
An appropriate Order will enter.

The Court notes that a Second Amended Complaint (Doc. No. 36) has been filed in the instant action. Normally, the filing of a new operative complaint would moot Defendants' Partial Motion to Dismiss (Doc. No. 26), which is based on Plaintiffs' previous Amended Complaint (Doc. No. 24). See Alsbrook v. Recontrust Co., N.A., No. 2:13-cv-02067-JPM-cgc, 2013 WL 1820049, at *1 (W.D. Tenn. Apr. 30, 2013) ("Courts in this Circuit and others will deny motions to dismiss a complaint as moot after a plaintiff subsequently files an amended complaint."). However, an Agreed Order (Doc. No. 35) has been entered in the instant action, noting that the parties have agreed that the filing of the Second Amended Complaint shall not moot or otherwise impact the Defendants' pending Partial Motion to Dismiss.

The Court notes that, even if Defendants are successful in terminating the litigation, it may not even be necessary to file a motion to dissolve the lien lis pendens upon the litigation's termination. Tennessee Code Annotated § 20-2-103 provides:
(a) Where the suit, abstract of the claimed lien in which has been filed and recorded, shall finally terminate, whether on the merits or otherwise, the court may direct the entry on the lien book in the registry of an order respecting same made by it, which order, certified by the clerk, shall be presented to the register, who shall immediately note its date and record it on the lien book at the proper place.
(b) Should no such order be entered by the court, it shall be the duty of the plaintiff or complainant who filed the notice abstract to cause to be noted of record the fact of termination, or, if the claim be satisfied, the satisfaction thereof, such notation to be attested in writing by the register, or his deputy.
Thus, the statute provides that "if the court does not so order it is the duty of the plaintiff to note the fact of termination in the register's office where the notice is filed." Figlio, 1988 WL 63497, at *4.