IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2021 Session

## JAMES MICHAEL BAILEY ET. AL V. FIRSTBANK

**Appeal from the Circuit Court for Rutherford County**
**No. 71395     Don R. Ash, Senior Judge**

_____

**No. M2020-00837-COA-R3-CV**

_____

Consumers discovered negative information on their credit reports. Believing that the information was false, the consumers filed a Fair Credit Reporting Act claim against the bank that furnished the information. *See* 15 U.S.C. §§ 1681n, 1681o. On the bank's motion, the court summarily dismissed the action because the consumers were unable to prove an essential element of a Fair Credit Reporting Act claim. The court also denied the bank's request for an award of attorney's fees. Both sides appealed. Based on the undisputed facts, we conclude that the bank was entitled to a judgment as a matter of law on the Fair Credit Reporting Act claim. We also conclude that the bank did not prove that it was entitled to an award of attorney's fees. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellants, James Michael Bailey and Kimberly Moore Bailey.

Theodore W. Goodman, Murfreesboro, Tennessee, for the appellee, FirstBank.

## OPINION

### I.

#### A.

In 2013, Michael and Kimberly Bailey purchased residential property at auction. To fund the purchase, they obtained a short-term mortgage loan from FirstBank. The promissory note was secured by a deed of trust on the property. The note obligated the Baileys to make monthly interest payments to FirstBank, with full payment due on April 30, 2014.

The Baileys then embarked on an extensive renovation plan for the home. They financed the renovations primarily using zero-interest credit cards with high credit limits. They planned to complete the renovations and refinance the short-term mortgage before its maturity date. But the renovations took longer than anticipated. While the Baileys paid all monthly interest payments on time, they did not pay the note in full by its maturity date. FirstBank extended the maturity date on the note four times. These changes were memorialized in written debt-modification agreements signed by the parties.

In late March 2015, the Baileys received two letters notifying them of the closure of some unused credit card accounts. One letter cited a "serious delinquency" as a reason for the closure. This news prompted the Baileys to review their credit reports. That review led to the discovery that FirstBank had reported their loan account as delinquent multiple times. A March 30 credit report from TransUnion showed five delinquency reports from FirstBank between May 2014 and January 2015.

The Baileys immediately contacted Fred Howell, the loan officer at FirstBank responsible for their account. The Baileys maintained that they had never missed a monthly payment to FirstBank. And they demanded that the bank correct the inaccurate reports. Mr. Howell responded that same day. He assured the Baileys that the bank "made the correction to your credit bureau this morning." And he agreed that "[t]he late payments never should have hit as you have always paid on time. Unfortunately, when a matured loan goes pa[s]t the loan maturity date it is reposted as a past due."[1]

The negative information was removed from the Baileys' credit reports by April 2015. The Baileys completed their renovations and paid their debt to FirstBank in full in late 2015.

---

[1] For the most part, the automatic delinquency reports occurred after the maturity date on the loan but before the signing of a debt-modification agreement.

## B.

On May 27, 2016, the Baileys filed suit against FirstBank. The complaint alleged that FirstBank negligently or willfully violated the Fair Credit Reporting Act ("FCRA") by "falsely reporting . . . the delinquency of the Bailey account . . . when that information was known by [FirstBank] to be inaccurate, incomplete, or false." *See* 15 U.S.C. §§ 1681n, 1681o (2020). They also asserted a state law credit defamation claim. FirstBank denied liability and raised a host of affirmative defenses. The bank also requested an award of attorney's fees.

FirstBank moved for summary judgment on multiple grounds. It argued that the Baileys did not have a private right of action under the federal statute. And it sought dismissal of their defamation claim based on preemption, the applicable statute of limitations, and/or waiver. The bank also sought a judgment for attorney's fees under either the loan documents or the FCRA. But, if the court declined to award fees at the summary judgment stage, the bank asked for another hearing to prove that it was entitled to a fee award.

These key facts were undisputed. The Baileys first learned that FirstBank had made the delinquency reports on March 30, 2015. But they never provided notice to a credit reporting agency that they disputed the reports. Instead, they complained directly to FirstBank. And FirstBank caused the delinquency reports to be removed. As of April 13, 2015, credit reports from all three major credit reporting agencies showed no significant negative or derogatory information about Mr. or Mrs. Bailey.

Even so, the Baileys argued that summary judgment in the bank's favor was not warranted. They relied on deposition testimony from Mr. Howell, the loan officer, and the Baileys' joint affidavit. Mr. Howell acknowledged that the Baileys paid every monthly bill from FirstBank in full and on time. FirstBank never told the Baileys that they were in default. The delinquency reports were generated automatically by the bank because the maturity date on the loan had passed without full payment. As he recalled, the bank retracted the delinquency reports the next day. But it never informed the Baileys about the automatic reports. Nor did it consider whether these reports would adversely affect the Baileys' ability to fund the ongoing renovations. According to the Baileys, the bank's immediate "revers[als] or correct[ions]" precluded them from notifying the consumer reporting agencies of a dispute.

## C.

The trial court granted summary judgment in FirstBank's favor. The Baileys conceded that their defamation claim was preempted by the FCRA. So the court declined to address FirstBank's statute of limitations defense and its waiver argument.

3

Turning to the FCRA claim, the court recognized that FirstBank was subject to the requirements of the federal statute. But a consumer cannot enforce the FCRA against a furnisher of information unless the consumer has reported the dispute to a credit reporting agency. Because the Baileys never took that step, they could not maintain an FCRA claim against FirstBank. The Baileys argued that FirstBank should be estopped from asserting the notice protection in the FCRA because the bank's unusual conduct precluded them from filing a dispute. The court rejected their estoppel argument, citing a lack of proof.

FirstBank moved to alter or amend the judgment to include an award of attorney's fees under the loan documents or the federal statute. *See* Tenn. R. Civ. P. 59.04. In the alternative, FirstBank requested further proceedings to allow it to prove that it was entitled to fees under the FCRA. The court refused to allow either party to submit any new evidence.[2] And, based on the evidence in the record, the court determined that FirstBank was not entitled to an award of attorney's fees.

## II.

The Baileys raise one issue on appeal—whether the trial court erred in granting summary judgment to FirstBank in light of the bank's inequitable conduct. FirstBank asks us to affirm the trial court's equitable estoppel ruling. But the bank contends that the trial court erred in denying its request for attorney's fees and declining to hold a subsequent evidentiary hearing on whether the bank was entitled to a fee award.[3]

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See*

---

[2] The post-judgment motion was assigned to a new judge.

[3] FirstBank also argues that the court erred in its interpretation of the debt-modification agreement. But the bank waived this issue by not including it in its statement of issues. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (reasoning that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue").

*Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. We view all of the evidence in the light most favorable to the nonmoving party, including resolving all inferences to be drawn from the facts in that party's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment will be affirmed. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## A. FAIR CREDIT REPORTING ACT CLAIM

FirstBank did not bear the burden of proof on the FCRA claim at trial. To persuade the court that no genuine and material factual issues existed and that it was entitled to summary judgment, FirstBank could either affirmatively negate an essential element of the Baileys' claim or demonstrate that the evidence at the summary judgment stage was insufficient to establish their claim. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). The bank argued that the Baileys' failure to file a dispute with a consumer reporting agency doomed their FCRA claim.

Because it furnishes information to consumer reporting agencies, FirstBank is subject to the requirements of the FCRA. *See* 15 U.S.C. § 1681s-2 (2020) (outlining the duties of a furnisher). Furnishers have two main obligations under the FCRA: (1) to make accurate reports; and (2) to conduct a reasonable investigation after receiving notice of dispute from a consumer reporting agency. *Id.* § 1681s-2 (a)-(b); *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019). The FCRA creates a private right of action for consumers. 15 U.S.C. §§ 1681n, 1681o. But consumers may only pursue a cause of action against a furnisher for violation of the duty to investigate a disputed report. *See id.* § 1681s-2(c)-(d); *see also Scott*, 936 F.3d at 517; *Dajani v. New S. Fed. Sav. Bank*, No. M2007-02444-COA-R3-CV, 2008 WL 5206275, at *3 (Tenn. Ct. App. Dec. 12, 2008) ("The FCRA limits enforcement of [the] . . . duty to supply accurate information exclusively to certain federal and/or state officers.").

To trigger the duty to investigate, consumers must file a dispute with a consumer reporting agency. *Scott*, 936 F.3d at 517; *see* 15 U.S.C. § 1681i (2020) (governing the procedure for disputing the accuracy of information in a credit report). A consumer may dispute the accuracy of a report directly with the furnisher. 15 U.S.C. § 1681s-2(a)(8). But those complaints will not trigger the duty to investigate. *Scott*, 936 F.3d at 517-18.

The Baileys admit they never notified a consumer reporting agency that they disputed the reports from FirstBank. But they argue that FirstBank should be estopped from relying on the notice requirement. *See id.* at 518 n.2 (recognizing that equitable estoppel may bar a defendant from contesting an element of a plaintiff's claim). They point to Mr. Howell's testimony that the bank never told the Baileys about the automatic reports.

5

Instead, as he recalled, the bank reversed the reports the next morning. According to the Baileys, these immediate reversals precluded them from filing a dispute with a consumer reporting agency.

The Baileys have the burden to prove their equitable estoppel theory. *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004). With respect to FirstBank, they must have evidence of

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citations omitted). They must also be able to show their own

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Id.*

Like the trial court, we conclude that the Baileys cannot prove all the elements of equitable estoppel. Most significantly, they cannot show their own lack of knowledge. They admit that they first learned about the delinquency reports on March 30 when they reviewed their credit report from TransUnion. The TransUnion report flagged the FirstBank loan as an "adverse account." Despite Mr. Howell's recollections, all of FirstBank's delinquency reports were duly noted on the TransUnion report. The Baileys could have directed their complaints to TransUnion. But they chose to contact the bank instead. *See Scott*, 936 F.3d at 517-18.

Even viewing the evidence in the Baileys' favor, including all reasonable inferences, we conclude that First Bank is entitled to a judgment as a matter of law on the FCRA claim. The Baileys never notified a consumer credit agency that they disputed the accuracy of the information from FirstBank. *See* 15 U.S.C. § 1681i(a). And they cannot use equitable estoppel to avoid this obstacle without proof of their own lack of knowledge. *See Osborne*, 130 S.W.3d at 774. So they cannot prove an essential element of their FCRA claim. *See Scott*, 936 F.3d at 518.

6

## B. REQUEST FOR ATTORNEY'S FEES

FirstBank argues that it is entitled to an award of attorney's fees under either the loan documents or the FCRA. Tennessee courts have no discretion "to deny an award of fees mandated by a valid and enforceable agreement between the parties." *Eberbach v. Eberbach*, 535 S.W.3d 467, 479 (Tenn. 2017). But when parties rely on statutory authority for an award of attorney's fees, "the statute governs." *Id.* at 477.

1. Attorney's Fees Provision in the Loan Documents

We review FirstBank's contractual claim de novo. Whether a party is entitled to attorney's fees based on a written agreement is a question of law. *Id.* at 479 n.7.

Contractual provisions creating a right to recovery of attorney's fees are strictly construed and will be interpreted as an exception to the American rule "only when a contract *specifically* or *expressly* provides for the recovery of attorney fees." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009). FirstBank relies upon virtually identical language in the promissory note and deed of trust as the basis for its contractual claim.[4] The pertinent language from the promissory note reads

> On or after the occurrence of an Event of Default, to the extent permitted by law, [the Baileys] agree to pay all expenses of collection, enforcement or protection of [FirstBank's] rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable and actual attorneys' fees, court costs and other legal expenses.

This language unambiguously provides for the payment of attorney's fees incurred to collect, enforce, or protect FirstBank's rights and remedies under the promissory note and the loan documents after an event of default. FirstBank contends that this language includes the expenses incurred in this litigation. We disagree. Recovery of attorney's fees under a contractual provision "is limited to the situation agreed to by the parties in the contract." *J & B Invs., LLC v. Surti*, 258 S.W.3d 127, 138 (Tenn. Ct. App. 2007). And the Baileys only agreed to pay the expenses associated with the protection of the bank's rights and remedies **under the loan documents**. By the time this lawsuit was filed, the loan had been fully paid. The fees at issue here reflect the bank's efforts to defend its rights and remedies under the FCRA. The subject provision simply does not allow for an award of attorney's fees in this situation.

---

[4] In the Deed of Trust, the Baileys agreed "to pay all expenses, of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. . . . Expenses include, but are not limited to, reasonable and actual attorneys' fees, court costs, and other legal expenses."

2. Attorney's Fees under the FCRA

The FCRA authorizes an award of attorney's fees to the prevailing party if the court finds "that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C. § 1681n(c); *see also id.* § 1681o(b) (containing identical language). To establish bad faith, FirstBank had to show "subjective bad faith" or that the Baileys filed an action that was "frivolous, unreasonable or without foundation." *Smith v. HM Wallace, Inc.*, No. 08-22372-CIV, 2009 WL 3179539, at \*2 (S.D. Fla. Oct. 1, 2009); *accord Arutyunyan v. Cavalry Portfolio Servs.*, No. CV 12-4122 PSG (AJWx), 2013 WL 500452, at \*2 (C.D. Cal. Feb. 11, 2013); *Ryan v. Trans Union Corp.*, No. 99 C 216, 2001 WL 185182, at \*5 (N.D. Ill. Feb. 26, 2001).

FirstBank complains that the trial court refused to consider its evidence of subjective bad faith. Specifically, the court did not consider an email message Mrs. Bailey sent to her husband on March 30, 2015, shortly after she discovered the multiple delinquency reports. In colorful language, Mrs. Bailey expressed her outrage at FirstBank. And she threatened to burn the bank down. We review evidentiary decisions for an abuse of discretion. *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g*, (Aug. 26, 2015). "A trial court abuses its discretion by applying an incorrect legal standard or reaching an illogical or unreasonable decision that causes an injustice to the complaining party." *Id.*

We agree that the trial court erred in refusing to consider the email. The court deemed the email to be "new evidence" outside the record on summary judgment. *See* Tenn. R. Civ. P. 56.04 (limiting the court to consideration of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits"). But the email was part of the summary judgment record. FirstBank filed it in support of its motion for summary judgment. And it cited to the email in its statement of undisputed material facts.

Even so, the court's error was harmless. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). Subjective bad faith generally implies dishonesty or ill will. *Thomas v. Santander Consumer USA*, No. 1:11CV605, 2012 WL 263479, at \*3 (M.D.N.C. Jan. 30, 2012). Nothing in Mrs. Bailey's email message shows that the Baileys filed this action in bad faith. *See Perri v. Diversified Adjustment Serv., Inc.*, No. CV-18-01571-PHX-DGC, 2018 WL 6669475, at \*2 (D. Ariz. Dec. 19, 2018) (ruling that plaintiff's negative description of defense counsel in email message did not establish that he filed his FCRA claim in bad faith). The email

does not evidence dishonesty or sufficient ill will to justify an award of attorney's fees.[5] *Cf. Shipley v. Trans Union Corp.*, No. C04-2560P, 2006 WL 1515594, at \*3-4 (W.D. Wash. May 25, 2006) (ruling that defendant established bad faith by showing that the plaintiff filed suit only after he failed in his attempt to remove damaging credit information with fraudulent documentation).

The bank also argues that it proved bad faith by showing that the Baileys' claim lacked factual and legal merit. The Baileys admitted during discovery that they never filed a dispute with a consumer credit agency—an admission that ultimately led to the summary dismissal. They also conceded, at summary judgment, that the FCRA preempted their state law defamation claim. And the court rejected their equitable estoppel argument for lack of proof.

This evidence does not demonstrate that the Baileys knew that their claims were doomed from the outset. *See Arutyunyan*, 2013 WL 500452, at \*3 (reasoning that proof failed to "establish that Plaintiff actually knew that the action was unfounded or frivolous at the time it was filed"). "It is not enough to show that the 'pleading, motion, or other paper' in question 'later turned out to be baseless.'" *Angino v. Transunion, LLC*, No. 1:17-cv-954, 2019 WL 8163967, at \*2 (M.D. Pa. Sept. 26, 2019) (citation omitted); *see Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978) (cautioning courts against "engag[ing] in post hoc reasoning . . . that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"). The statute does not authorize an award of fees just because the case was dismissed at summary judgment. *See Edge v. Pro. Claims Bureau*, 64 F. Supp. 2d 115, 119 (E.D.N.Y. 1999).

Fees are warranted when the "unsuccessful pleading" **was filed** in bad faith. 15 U.S.C. § 1681n(c); *see Rogers v. Johnson-Norman*, 514 F. Supp. 2d 50, 52 (D.D.C. 2007) (noting that the statute requires proof that the filing, not the maintenance, of the action was in bad faith or for harassment). When this litigation was filed, the Baileys' claims "were not objectively frivolous." *Edwards v. Auto Showcase Motorcars of Palm Beach, LLC*, No. 09-80932-CIV, 2011 WL 1303166, at \*1 (S.D. Fla. Apr. 5, 2011). Their equitable estoppel theory had a plausible legal basis "that was not completely and utterly baseless." *Id.*; *Lawrence v. Paramount Residential Mortg. Grp., Inc.*, No. 3:19-cv-02103-JR, 2021 WL 5356968, at \*3 (D. Or. Oct. 12), *report and recommendation adopted*, No. 3:19-CV-02103-JR, 2021 WL 5355923 (D. Or. Nov. 16, 2021) (reasoning that "it was not bad faith for plaintiff to advance an ultimately doomed, but novel, legal argument"). Nor did the bank show that the Baileys knew that any of the facts alleged in the complaint were false. *Cf. Angino*, 2019 WL 8163967, at \*2-3 (finding bad faith based on evidence that the

---

[5] The trial court indicated that the language in the email, while it reflected poorly on Mrs. Bailey, did not rise to the level of bad faith.

plaintiffs knew their credit reports were accurate before filing suit); *Celestine v. JPMorgan Chase Bank, N.A.*, No. 17-CV-20915, 2018 WL 6812675, at *3 (S.D. Fla. Oct. 24, 2018), *report and recommendation adopted*, No. 17-CV-20915-KMM, 2018 WL 6807290 (S.D. Fla. Nov. 13, 2018) (ruling that evidence supported a finding of bad faith, in part, because the "accuracy of Plaintiff's contested credit report was apparent from the face of the pleadings and exhibits thereto"); *Lewis v. Trans Union LLC*, No. 04 C 6550, 2006 WL 2861059, at *4 (N.D. Ill. Sept. 29, 2006) (finding attorney's fees were warranted when defendant had proof that the plaintiff knowingly made false allegations in the complaint).

We conclude that the trial court did not err in refusing to award attorney's fees to FirstBank based on the FCRA. The bank did not prove that the Baileys filed this action in bad faith or for purposes of harassment.

Nor did the court err in failing to hold another hearing. FirstBank sought a fee award as part of its motion for summary judgment. It was the bank's obligation to come forward with the necessary proof to support its motion. *See TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (explaining burden of production when the moving party bears the burden of proof on the challenged claim at trial). The bank failed to meet that burden. Given this record, we are not persuaded that the bank is entitled to another hearing on this same issue.

## C. ATTORNEY'S FEES FOR FRIVOLOUS APPEAL

FirstBank also seeks an award of attorney's fees as damages for a frivolous appeal. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as to not discourage legitimate appeals." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). This appeal was not devoid of merit. The Baileys "made legitimate arguments and cited to relevant law and facts." *See Coolidge v. Keene*, 614 S.W.3d 106, 120 (Tenn. Ct. App. 2020). Their appeal was unsuccessful, not frivolous. *See id.*

## III.

Based on the undisputed facts, FirstBank is entitled to a judgment as a matter of law on the FCRA claim. But FirstBank did not prove that it was entitled to an award of attorney's fees based either on the loan documents or the FCRA. So we affirm the trial court's decision. This case is remanded to the trial court for such other proceedings as are necessary and consistent with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MᴄBRAYER, JUDGE